Matthias, J.
 

 There is but one question presented in this case and that is whether the record discloses any evidence that the injury causing the death of the employee, Noah Lewis, was occasioned in the course of his employment. The error urged is the refusal of the trial court to direct a verdict for the Industrial Commission.
 

 It is well settled that in order to be compensable the injury must have been sustained in the course of employment, and arise out of the employment, or, in the language of Section 35 of Article II of the Constitution, the death must have been “occasioned in the course of such workmen’s employment.” It is essential that the employment have “some causal connection * * * ^th the injury, either through its activities, its conditions, or its environments.”
 
 Grabler Manufacturing Co.
 
 v.
 
 Wrobel, ante,
 
 265, 181 N. E., 97, and cases there cited.
 

 There is no material conflict as to the facts, and
 
 *298
 
 they may be stated very concisely. The duties of Noah Lewis were those of a collector for his employer, and in the discharge of those duties he made calls upon debtors of his employer in the evenings. On the evening in question he had in his possession the separate cards of four individual debtors of his employer, upon two of which were entries indicating collections had been made upon that date, presumably by Lewis, before reaching his home for his supper. The record discloses that it was the intention of Lewis, upon arriving home, to endeavor to make further collections that evening. He placed the cards in his pocket and then got ready to go on his bicycle, but as he went out of the house his stepson informed him of an advertisement he had seen in a local newspaper for a farm hand, and suggested that the job might be procured for a Mr. Edwards, who was then, and had been for some time, a boarder at the Lewis home, but had been out of work for a month. It was disclosed that Lewis was interested in Edwards getting a job, by reason of his indebtedness for his board. After endeavoring to reach the farmer by telephone and failing to do so, Lewis procured Fred Miller, another boarder, who owned an automobile, to take him and Edwards out to the farmer’s house, twelve or fifteen miles northwest of Hamilton. Lewis ’ stepson, Earl Hamilton, also accompanied them.
 

 They had some difficulty in finding the farmer, and some delay was occasioned. Edwards procured the position and remained at the farm; the other three started back to Hamilton about 9:45 p. m. After reaching the city and traveling to the junction of Third and Dayton streets, Miller, who was driving, turned east upon the suggestion of Lewis, and instead of turning south at Fourth street, as Miller stated he had intended, he acted upon the further suggestion of Lewis that he proceed eastwardly on Dayton street to Sixth street. Just beyond the intersection of Fourth street
 
 *299
 
 and Dayton street they were struck by a train at the crossing of the Baltimore
 
 &
 
 Ohio Railroad, and Lewis was killed. This occurred at 10:30 p. m.
 

 The record discloses that Lewis’ wife was confined to ber bed, and bad insisted that be should not leave the bouse that evening, but be stated that be must make bis collection visits to retain bis job, that upon leaving borne Lewis bad said be could go to the country, and also make bis calls, and that when in the country be kept hurrying Miller because be wanted to get back to Hamilton. However there is no evidence whatever in the record, and no fact from which any possible inference can be drawn which indicates that there was any debtor of Lewis’ employer in the vicinity where be was driving, or in the direction which be was traveling when struck, or anywhere between that location and bis own home. The general course then being followed was toward the Lewis home. His home was southeast, while the two debtors whose cards Lewis bad in bis pocket lived southwest of the point where the accident occurred, and at the time of its occurrence Lewis upon bis own suggestion was being driven, not toward, but away from, the homes of the debtors whose names appeared upon the two collection cards be bad in bis pocket. Lewis would have been traveling in the general direction of bis home whether be bad proceeded south on Third street or on Fourth street, or east on Dayton street and thereafter turning south on Sixth street, as be bad directed Miller to do. It is clear that the direction taken upon the request of Lewis was away from instead of toward the only two places where, as the evidence discloses, be could have performed any duty that evening on behalf of bis employer. The mission upon which Lewis was engaged in driving to the country was not on behalf of bis employer, or pursuant to any duty in connection with bis employment, but was solely for the purpose of serving bis own interest in procuring employment for a
 
 *300
 
 debtor of bis own, so that be could secure payment of tbe amount due bim. Tbe evidence is clear and undisputed that Lewis ’ presence at tbe place of injury was not in performance of any duty devolving upon him as an employee of tbe contributing employer, and that even though he may have bad some intention to later make some calls in tbe line of bis duty, be was at tbe time of bis injury completing tbe trip made in his own behalf. If it be claimed that be had completed bis own mission, and was starting upon the discharge of some duty for bis employer, there must be some evidence to support tbe claim. It is stated that he may have been intending to call upon a debtor, even though be bad no such card, or that one of tbe two debtors whose card be bad may have been temporarily in that locality, and thus inference is based upon inference to support a theory which has no support in any fact disclosed by tbe evidence.
 

 Tbe Workmen’s Compensation Law is construed liberally and with a view to accomplishing tbe purpose of its enactment, but an award is not authorized unless there be some evidence to support tbe claim of liability. An inference of fact cannot be predicated upon another inference, but must be predicated upon some fact supported by evidence.
 
 Sobolovitz
 
 v.
 
 Lubric Oil Co.,
 
 107 Ohio St., 204, 140 N. E., 634.
 

 Tbe validity of tbe Workmen’s Compensation Law has been sustained because it contemplates an award from tbe fund created from compulsory contributions or assessments only for injuries occasioned in the course of employment of a contributing employer. There must, therefore, be some evidence that tbe injury was sustained in tbe performance of some act or the discharge of some duty in tbe service of tbe employer.
 
 Fassig
 
 v.
 
 State, ex rel Turner, Atty. Genl.,
 
 95 Ohio St., 232, 116 N. E., 104;
 
 Industrial Commission
 
 v.
 
 Ahern,
 
 119 Ohio St., 41, 162 N. E., 272, 59 A. L. R., 367. There is in tbe record of this case no evidence tending
 
 *301
 
 to support any fact from which, such, an inference could properly be drawn.
 

 Judgment reversed.
 

 Mabshall, C. J., JoNEs, Day, Kinkade and Stephen - soN, JJ., concur.