**DUNCAN, Appellant,**

**v.**

**OHIO BLOW PIPE COMPANY et al., Appellees.**

[Cite as *Duncan v. Ohio Blow Pipe Co.* (1998), 130 Ohio App.3d 228.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 73056.

Decided Oct. 5, 1998.

*Berger & Kirschenbaum Co., L.P.A.,* and *Robert W. Todt,* for appellant.

*Kahn, Kleinman, Yanowitz & Arson Co., L.P.A., Robert J. Valerian* and *Robert A. Zimmerman,* for appellee Ohio Blow Pipe Company.

*Betty D. Montgomery,* Attorney General, and *Doug S. Musick,* Assistant Attorney General, for appellee Bureau of Workers' Compensation.

TIMOTHY E. McMONAGLE, Judge.

Plaintiff-appellant, Larry K. Duncan, appeals the decision of the Cuyahoga County Common Pleas Court granting a directed verdict in favor of defendants-appellees Bureau of Workers' Compensation and the Industrial Commission of Ohio (collectively referred to as the "Industrial Commission") on the basis that appellant's injuries were not sustained in the course and scope of his employment with Ohio Blow Pipe Company ("OBP").[1] For the reasons that follow, we reverse and remand.

On March 13, 1996, appellant, a welder employed by OBP, was in California at the direction of his employer on a three-week installation assignment. As is customary in his position with this particular company, his assignments take him to several different cities for extended periods of time in furtherance of OBP's business. Equally customary is the undisputed fact that OBP pays not only for appellant's travel to these cities, but also for his lodging, meals, and rental transportation.

On that particular day, appellant finished working at the job site around 4:00 p.m. He drove to his hotel, showered, and eventually left for dinner at approximately 8:00 p.m. Upon returning from dinner at approximately 10:30 p.m., appellant was involved in an automobile accident in which he was injured. Attempts on his behalf to participate in the workers' compensation program as a result of these injuries were unsuccessful at the administrative level. In the appeal to the trial court that followed, the trial court directed a verdict in favor of the Industrial Commission.

Appellant timely appeals and assigns the following error for our review:

"The trial court erred by granting defendant–appellee's motion for directed verdict because as a matter of law, plaintiff–appellant Larry Duncan introduced sufficient evidence that he was in the course and scope of his employment with Ohio Blow Pipe Company when his injury occurred."

---

1. Appellant's complaint also names OBP as a defendant, and OBP is represented by counsel separate from that of the Industrial Commission. The trial court's journal entry, though, merely states, "Motion of [defendant] for directed verdict granted at [plaintiff's] costs." We acknowledge that this court has, in the past, found such an order to be nonfinal because it did not expressly adjudicate the claims against the employer. See *Bellia v. Gen. Motors Corp.* (Dec. 15, 1994), Cuyahoga App. No. 66752, unreported, 1994 WL 706145. We nonetheless find that when an employee files a complaint seeking to recover under the Workers' Compensation Act and names his or her employer as an additional party-defendant and no separate claim is made against the employer, any resulting judgments for or against recovery would essentially moot the claims against the employer. See, *e.g., Wise v. Gursky* (1981), 66 Ohio St.2d 241, 20 O.O.3d 233, 421 N.E.2d 150.

In his sole assignment of error, appellant contends that the trial court inappropriately directed a verdict in favor of the Industrial Commission where sufficient evidence was before the trial court demonstrating that appellant's injuries were sustained while in the course of, and arose from, his employment with OBP. Specifically, appellant claims that he was in California at the expense and direction of his employer, which included OBP's payment of his meals, and the injuries he sustained as he returned from his evening meal occurred in the course of and arose from his employment with OBP. Appellees, on the other hand, maintain that appellant's return from dinner was not in furtherance of the employer's business but rather a purely personal endeavor unrelated to his employment with OBP.

The standard to be applied by a trial court in considering a motion for a directed verdict is set forth in Civ.R. 50(A)(4), which provides:

"When a motion for directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

A motion for a directed verdict tests the legal sufficiency of the evidence, and therefore presents a question of law. *Grau v. Kleinschmidt* (1987), 31 Ohio St.3d 84, 90, 31 OBR 250, 255, 509 N.E.2d 399, 404–405; see, also, *Dimora v. Cleveland Clinic Found.* (1996), 114 Ohio App.3d 711, 716, 683 N.E.2d 1175, 1178–1179. The trial court may not weigh the evidence or test the credibility of the witnesses but must give to the party opposing the motion the benefit of all reasonable inferences from the evidence. *Zavasnik v. Lyons Transp. Lines, Inc.* (1996), 115 Ohio App.3d 374, 378, 685 N.E.2d 567, 569; see, also, *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284, 21 O.O.3d 177, 178–179, 423 N.E.2d 467, 469. Where there is substantial competent evidence favoring the nonmoving party so that reasonable minds might reach different conclusions, the motion must be denied. *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 109, 592 N.E.2d 828, 837.

An injury sustained by an employee is compensable under the Workers' Compensation Act only if it was "received in the course of, and arising out of, the injured employee's employment." R.C. 4123.54 and 4123.01(C). The test of the right to participate in the fund is whether a causal connection exists between an employee's injury and the employment, either through the activities, the conditions or the environment of the employment. *Bralley v. Daugherty* (1980), 61 Ohio St.2d 302, 303, 15 O.O.3d 359, 359–360, 401 N.E.2d 448, 449–450. It is well

settled, however, that the Workers' Compensation Act "does not create a general insurance fund for the compensation for injuries in general to employees but only for those injuries which occur in the course of and arise out of the employment." *Fletcher v. Northwest Mechanical Contractors, Inc.* (1991), 75 Ohio App.3d 466, 470, 599 N.E.2d 822, 824, quoting *Lohnes v. Young, Admr.* (1963), 175 Ohio St. 291, 292, 25 O.O.2d 136, 136–137, 194 N.E.2d 428, 429–430. The Act, nonetheless, is to be liberally construed in favor of the employee. R.C. 4123.95.

■ In order for an injury to be compensable under the Workers' Compensation Act, both prongs of the test set forth in R.C. 4123.01(C) must be satisfied. That is, the injury must be received "in the course of" as well as "arise out of" the employment. *Fisher v. Mayfield* (1990) 49 Ohio St.3d 275, 277, 551 N.E.2d 1271, 1273–1274. Factors used to determine whether an injury was sustained while in the course of employment include consideration of the time, place, and circumstances surrounding the injury. *Id.* An injury arises from the employment, on the other hand, when a causal connection between the injury and employment can be ascertained.

Until recently, much of the case law in this area has revolved around the employee's status as a fixed-situs employee as opposed to some version of a non-fixed-situs employee. *See Fletcher,* 75 Ohio App.3d at 473–474, 599 N.E.2d at 826–828. "As a general rule, an employee with a fixed place of employment, who is injured while traveling to or from his place of employment, is not entitled to participate in the Workers' Compensation Fund because the requisite causal connection between the injury and the employment does not exist." *MTD Products, Inc. v. Robatin* (1991), 61 Ohio St.3d 66, 68, 572 N.E.2d 661, 663. Known as the coming-and-going rule, the rule has been rationalized to contemplate only those hazards encountered by an employee in the discharge of the duties of the employment, and not the risks and hazards, such as travel to and from the employee's actual employment over streets and highways, that are similarly encountered by the public generally. See *Indus. Comm. v. Baker* (1933), 127 Ohio St. 345, 188 N.E. 560, paragraph four of the syllabus.

This distinction, however, was recently reconsidered in the Ohio Supreme Court's decision in *Ruckman v. Cubby Drilling, Inc.* (1998), 81 Ohio St.3d 117, 689 N.E.2d 917. There the court determined that despite periodic relocation of job sites, as in this case, each particular job site may constitute a fixed place of employment. The court went on to analyze the particular status of the employees in the *Ruckman* case and concluded that the employees, who were oil-well riggers, were fixed-situs employees because, although they had no duties to perform away from the particular drilling sites to which they were assigned, each day began and ended at the particular drilling site.

When questioned during oral argument about the applicability of *Ruckman* to the facts of this case, appellant maintained the two cases were distinguishable on the basis that the injured employees in *Ruckman*, though assigned by their employer to work at differing drilling sites, were traveling from their homes to the work site as opposed to the case *sub judice*, in which appellant was provided lodging in another city from which he traveled to and from the work site. We disagree. The *Ruckman* court stated:

"The focus remains the same even though the employee may be reassigned to a different work place monthly, weekly, or even daily. Despite periodic relocation of job sites, each particular job site may constitute a fixed place of employment."

The court concluded that although the work at each drilling site had limited duration, it was a fixed work site within the meaning of the coming-and-going rule. *Id.* at 120, 689 N.E.2d at 920–921. We acknowledge that the injured employees in *Ruckman* were not coming and going from a hotel, as in this case. We nonetheless find that the analysis employed by the *Ruckman* court to define a fixed-situs employee certainly could, by implication, include an employee, assigned to a job site monthly, weekly, or even daily, who would have to travel to another city and remain in that city overnight. With this in mind, we find that *Ruckman* has changed the analysis previously employed by the courts and so apply its reasoning to the facts of this case.

In the case *sub judice*, appellant was assigned to particular installation sites at the direction of his employer and had no duties to perform outside those assignments. Likewise, the day began and ended at each particular site, whether he was assigned to be at that site for a day, a week, or a month. Thus, appellant was a fixed-situs employee as that term has been interpreted by the *Ruckman* court.

This does not end the inquiry, however. If appellant can demonstrate that his injury was sustained in the course of and arising out of his employment with OBP, he then can avoid the force of the coming-and-going rule and participate in the State Insurance Fund.

## I. In the Course of Employment

Under the course-of-employment inquiry, compensable injuries are limited to those sustained by an employee while performing a required duty in the employer's service. *Indus, Comm. v. Gintert* (1934), 128 Ohio St. 129, 133–134, 190 N.E. 400, 402–403. Nonetheless, an employee need not necessarily be injured in the actual performance of work for the employer. *Sebek v. Cleveland Graphite Bronze Co.* (1947), 148 Ohio St. 693, 36 O.O. 282, 76 N.E.2d 892, paragraph three of the syllabus, overruled in part on other grounds by *Johnson v. Indus. Comm.* (1955), 164 Ohio St. 297, 58 O.O. 90, 130 N.E.2d 807, paragraph

four of the syllabus. An injury is compensable if it is sustained by an employee while that employee engages in an activity that is consistent with the contract for hire and is logically related, or is incidental, to the employer's business. *Id.* at paragraph three of the syllabus; see, also, *Kohlmayer v. Keller* (1970) 24 Ohio St.2d 10, 12, 53 O.O.2d 6, 7, 263 N.E.2d 231, 233; *Indus. Comm. v. Henry* (1932), 124 Ohio St. 616, 180 N.E. 194 (employee's injury compensable when sustained upon returning to work site after consuming breakfast). More particularly, the employee must be performing some required duty either directly or incidentally in the employer's service as opposed to performing some personal business, unconnected with the employment. See *Fletcher,* 75 Ohio App.3d at 471, 599 N.E.2d at 825, quoting *Indus. Comm. v. Ahern* (1928), 119 Ohio St. 41, 162 N.E. 272.

The nature of appellant's employment with OBP required him to be at different sites to install equipment at OBP's customers' sites. While appellant relies heavily on the fact that OBP paid not only for appellant's travel to the various sites, in this case California, but also for appellant's rental car and his meals, this fact alone is no longer sufficient evidence in determining whether an employee was in the furtherance of his employer's business. See *Ruckman,* 81 Ohio St.3d at 121, 689 N.E.2d at 921, fn. 1. What is critical is that appellant was in California at the direction of OBP as a condition of OBP's contract with its customer. Thus, appellant's travel during his stay in California was in the course of his employment with OBP.

## II. Arising Out of Employment

What remains to be decided is whether appellant's injury, which was sustained after his work day had been completed, can be considered an injury that arose out of the employment, specifically, whether a causal connection exists between the injury and appellant's employment with OBP.

The *Fisher* court reaffirmed a totality-of-the-circumstances test, first announced in *Lord v. Daugherty* (1981), 66 Ohio St.2d 441, 20 O.O.3d 376, 423 N.E.2d 96, to determine whether there existed such a causal connection. Factors to be considered include (1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident. *Fisher,* 49 Ohio St.3d at 277, 551 N.E.2d at 1273–1274.

Applying these factors to the instant case does not support a causal connection between appellant's injury and his employment with OBP. The accident occurred anywhere from five to six miles from the plant site on a highway over which OBP

had no control. Although a semantic argument to the contrary can be made, an equally plausible argument can be made that OBP did not derive any benefit from appellant's presence at the scene of the accident. Nonetheless, the *Ruckman* court found that the inability to satisfy the *Lord* test did not foreclose recovery if the injured employee could demonstrate that the employment relationship exposed the employee to a risk quantitatively greater than the risks common to the public. Known as the "special hazard rule," this rule has a purpose similar to that of the coming-and-going rule. *Ruckman* at 123, 689 N.E.2d at 922–923. The *Ruckman* court found the required causal connection, as the riggers were required to undertake lengthy commutes, thereby significantly increasing their exposure to traffic risks unlike that of the general public.

The same can be said of appellant in this case. Appellant, at the direction of his employer, traveled to an employment assignment in another state and stayed in a hotel for the duration of the assignment. OBP assumed that appellant would need to eat while there and provided not only a meal allowance for that purpose but also transportation. As a consequence, appellant's exposure to the risks associated with travel were quantitatively greater than that of the general public, who, most likely, would not be traveling to a restaurant for each of its daily meals. Since appellant's injuries were caused by a hazard of his employment, it necessarily follows that his injuries arose out of his employment.

Because we find substantial competent evidence that appellant's injuries occurred in the course of and arising out of his employment with OBP, the trial court erred in directing a verdict in favor of the Industrial Commission.

Accordingly, appellant's sole assignment of error is well taken and is sustained.

*Judgment reversed*
*and cause remanded.*

O'Donnell, P.J., and Spellacy, J., concur.